Mohr and another vs. Porter and another.

Mohr and another vs. Porter and another.

*April 10 — May 10, 1882.*

(1) MONEYS DEPOSITED IN COURT *for special purpose, not to be otherwise applied.* (2) JOINDER OF PARTIES *plaintiff, in ejectment.*

1. On recovering a judgment in ejectment, M. was required, as a condition of obtaining possession of the land, to pay into court a certain sum for the defendants, being the amount of purchase money paid by the latter at a guardian's sale of the land (adjudged to be invalid), with interest, taxes, etc. On appeal, the judgment was reversed; and the court below afterwards ordered the clerk to pay defendants, *out of the money so deposited by M.,* their costs in this court, etc. Some time before this order, M. had assigned said deposit to a third person, from whom he had borrowed the money. *Held,* that as the money was deposited for a special purpose, even if it had belonged to M. and the costs could not be collected by ex-

ecution against him, defendants would not have been entitled to a lien on the deposit for their costs; and that the order was erroneous.

2. It was also error to order a person to be joined with M. as plaintiff, who had no interest in the land except as mortgagee to secure payment for his professional services and advancements in the litigation.

APPEAL from the Circuit Court for *Rock* County.

Ejectment. There was a judgment in favor of the plaintiff, but requiring him, as a condition of obtaining possession of the premises, to pay to the defendants the purchase money and taxes paid by them, and the value of their improvements, with interest. The plaintiff caused the amount, $3,257.58, to be deposited in the circuit court, and was put in possession of the land. The judgment was subsequently reversed by this court, and a new trial ordered. See 51 Wis., 487. The costs of the defendants upon that appeal were taxed at $286.90, and execution therefor was issued and returned *nulla bona*. After the cause was remitted to the circuit court, the defendants moved that court for an order directing a writ of restitution, that the costs above mentioned be paid out of the moneys deposited by the plaintiff, and that *F. W. Cotzhausen* and U. R. Mohr be made parties plaintiff. The affidavits, upon which such motion was in part founded, stated, among other things, that shortly after the commencement of the action the plaintiff had conveyed an undivided one-half of the premises in controversy to *F. W. Cotzhausen*, one of his attorneys, and the other undivided one-half thereof to his son U. R. Mohr, and had thereby parted with all his alleged claim and title to the premises; that said grantees had been prosecuting the action, in plaintiff's name, for their own benefit and advantage; that they had mortgaged the said premises to one Valentine Scheiber; that the taxable costs and disbursements of the defendants in defending the action amounted to more than $400; that the judgment for costs recovered in the supreme

Mohr and another vs. Porter and another.

court was unpaid; and that the plaintiff had no property liable to execution and was insolvent. The affidavits in opposition to the motion stated, among other things, that the conveyance of the undivided one-half of the premises to *F. W. Cotzhausen* was intended only as collateral security for the payment to said *Cotzhausen* of his fees for professional services to be rendered and disbursements to be incurred in the action, and was executed and received with the express understanding between the parties thereto that it was to serve the purpose merely of an equitable mortgage; that, after the judgment in plaintiff's favor, for the purpose of raising the money required to be paid to the defendants, and for the purpose of paying the disbursements up to that time incurred, the said *Cotzhausen* and U. R. Mohr, with the assent of the plaintiff, mortgaged the premises to one Valentine Scheiber; that of the amount so raised the sum of $3,257.58 was deposited in court; that afterwards, the title of said mortgagors having failed by reason of the reversal of the judgment by the supreme court, they joined with the plaintiff in an assignment to said Valentine Scheiber of the fund so deposited; and that the plaintiff never had any interest in said fund, save the equitable interest growing out of said trust relation of said *Cotzhausen* to the plaintiff, and since the assignment thereof has had no interest whatever therein. The assignment, which was annexed as an exhibit to the affidavits, in connection with recitals of the facts concerning the judgment, the loan from Valentine Scheiber, the deposit of the fund, etc., stated that, "long before the entry of said judgment, all the interest of said plaintiff was sold and transferred to one *F. W. Cotzhausen* and one U. R. Mohr, who were the real parties in interest when said judgment was entered as aforesaid."

The motion was granted, and the plaintiff and *F. W. Cotzhausen* appealed from the whole of the order, except the

parts ordering a writ of restitution to issue and U. R. Mohr to be made a party plaintiff.

For the appellants there were briefs by *Cotzhausen, Sylvester & Scheiber* and *F. W. Cotzhausen, in propria persona,* and oral argument by *Geo. L. Jones:*

1. The court erred in ordering defendants' costs in the supreme court to be paid out of the special deposit. The moneys so deposited became a trust fund for a particular purpose, viz.: they were to be paid to defendants on submitting to the terms of the judgment. They did not belong to the judgment debtor. They were advanced by Valentine Scheiber on the faith and credit of the title resting in the plaintiff and those claiming under him, by the terms of the judgment; and the mortgagee always had an equitable lien thereon, and could at any time restrain the diversion of the fund by the plaintiff or others, to purposes foreign from those contemplated by the judgment. Moreover the fund had been assigned to the mortgagee, before any lien or equities in favor of the defendants had attached thereto. Although a fund may stand in court to the credit of a particular person, this is not conclusive evidence of title in him. Liens and vested interests of third parties are always protected in making distribution. Assignments of funds are recognized by the courts, and the moneys ordered to be paid accordingly. On all contested claims and questions, the court will judicially settle, from the evidence presented, who *ex æquo et bono* is entitled to the money. 2 Daniells' Chancery Pr., 1770–1816. See also *Flockton v. Peake,* 12 Weekly Reporter, 789. 2. *F. W. Cotzhausen* was not a necessary party. His position does not differ from that of Valentine Scheiber. Both are merely subsequent incumbrancers *pendente lite.* The deed to *Cotzhausen,* though absolute on its face, is but a mortgage, and in no sense can it be said that he has succeeded to the plaintiff's cause of action, either in whole or

in part; still less, that he meant by accepting such security to assume directly or indirectly, of his own motion, the litigation of questions of title, recovery of mesne rents and profits, restitution of purchase moneys, taxes, etc. A person cannot, in any case, against his will, be made complainant, either jointly or alone. Ample provision is made by statute to cover all possible cases of transfers *pendente lite*, so that no injustice may result either to complaining parties or defendants. See R. S., secs. 3077, 3084–5. A joinder of parties plaintiff, except on motion of the complaining party and voluntary submission, was never contemplated by sec. 2801, R. S. That section is substantially a reiteration of a familiar provision of the code (Howard's N. Y. Code, sec. 121; R. S. 1858, ch. 135, sec. 1; see Revisers' Notes, 203); and judicial constructions of the old provision are still in point. *Packard v. Wood,* 17 Abb. Pr., 318; *Emmet v. Bowers,* 23 How. Pr., 300; *Howard v. Taylor,* 11 id., 380; *Harris v. Bennett,* 6 id., 220; *Sheldon v. Havens,* 7 id., 268. See also R. S., secs. 2610, 2611. Nothing is said as to compulsory process to bring in unwilling parties plaintiff, and we know of no precedent to support the practice adopted in this case. Even where joint interests require all parties to sue, the power never existed to compel a stubborn joint owner to place himself upon record as plaintiff; but process served upon him as a defendant was the only method the courts knew of acquiring the necessary jurisdiction.·

For the respondents there was a brief by *H. S. Winsor,* their attorney, with *S. U. Pinney,* of counsel, and oral argument by *Mr. Pinney.* They argued *inter alia:* 1. The fund sought to be affected by the assignment was in the custody of the law. All the assignment could pass, was the right of the assignor to withdraw it; and the assignment was like that of a chose in action, the assignee taking it subject to all equities which by reason of existing facts the court having the custody of the fund might lawfully enforce

against it.   The judgment to which the court applied it was rendered in the same cause in which the money was deposited, and before the assignment was made; and no order for the withdrawal of the fund could lawfully have been made until the judgment under which it was paid in and under which the defendants might claim it, had not only been reversed, but such reversal officially certified to the court below.   Before that time the plaintiff could not have withdrawn it, and his assignee was in no better position.   Besides, the assignment was clearly intended to defraud the defendants, judgment creditors of the plaintiff.   *David v· Birchard*, 53 Wis., 492.   2. Sec. 2801, R. S., applies to the transfer of a partial interest by the plaintiff, and authorizes the joinder of the assignee with the original plaintiff as was done in this case.   As to the propriety of the joinder of parties thus circumstanced, see Bliss on Code Pl., § 74; *Schiffer v. Eau Claire*, 51 Wis., 390–393; *Seymour v. Carpenter*, id., 413; *Simar v. Canaday*, 53 N. Y., 305, 306.

COLE, C. J.   The appellants do not object to that portion of the order allowing a writ of restitution; but they do object to so much of the order as directs the clerk of the circuit court to pay the defendants or their attorney, out of the money deposited in court by the plaintiff *Mathias Mohr*, the sum of $286.90, the costs of this court on reversing the judgment, together with interest thereon and costs on the execution, and also to that portion directing that *Mr. Cotzhausen* be made a party plaintiff.   In respect to the first branch of the order, it is insisted by appellants' counsel that the moneys deposited in court did not in fact belong to *Mathias Mohr*, who was liable for costs on the record; and therefore that they ought not to be applied to the payment of his debt.   We have some doubt about the correctness of this view, but we shall not examine the evidence bearing upon this question; for, assuming that the money did really

belong to *Mathias Mohr*, we still think, under the circumstances, it ought not to be applied as ordered by the circuit court  This money was a special deposit, paid into court by *Mathias Mohr* under the judgment which he had obtained, and for a particular purpose.   As a condition to his having possession of the premises which he had recovered, he was required to pay into court, for the defendants in the action, the purchase money, interest, taxes, and assessed value of the improvements made by them.   It will be seen that this money was paid into court for a specific and definite object. It does not seem right and proper to lay hold of the fund thus paid into court, and appropriate it to an entirely different purpose from that intended.   It may be said that it is no hardship to require *Mathias Mohr* to pay the costs out of this fund,— which is a perfectly honest debt,— especially in view of the fact that they cannot be collected on an execution against him.   But it is more important that the utmost good faith be observed in all judicial proceedings, and that where money is paid into court for a specific and definite purpose it should not be diverted to another and different purpose, except for the most satisfactory reasons.   It is true, the fund was in the custody of the law; but, as we have said before, it was paid in as a special deposit.   The defendants had no equitable lien upon it for any costs which might be subsequently adjudged in their favor by this court.   Besides, it appears that the money deposited was borrowed of one Valentine Scheiber, and the same was duly assigned and set over to him soon after the judgment under which it was required to be deposited was reversed by this court.   This was some three months prior to the making of the order appealed from.   It is not at all probable that the money would, in the first instance, have been ordered to be paid into court as security for any costs which might accrue in the action; and upon the conceded facts we discover no ground for holding

that an equity for costs attached to the fund while in the custody of the law.

In respect to the other branch of the order, we can perceive no sufficient reason for making *Mr. Cotzhausen* a party plaintiff. Whatever interest he has in the premises is that of a mere mortgagee. An undivided half of the property was conveyed to him by *Mathias Mohr* and wife, as security for any professional services which he might render in the litigation, and for such necessary disbursements as he might be compelled to make in the case. It is apparent that this merely constituted him a mortgagee. Now, this action of ejectment can be determined, and the title to the property settled as between the real parties in interest, without his being before the court. It is true, in the assignment of the fund which was made there is a recital to the effect that, long before the entry of the judgment in the circuit court for the recovery of the property, all the interest of the plaintiff was sold and transferred to *F. W. Cotzhausen* and one U. R. Mohr, who were the real parties in interest. But the affidavits used on the hearing of the motion for the order appealed from conclusively show that this recital was a mistake, and that all the interest which *Mr. Cotzhausen* had in the property was that of a mortgagee. This being the case, we see no necessity for making him a party plaintiff to this action. A complete determination of the controversy can be had without his being before the court.

It follows, from these views, that the order appealed from must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— So ordered.

CASSODAY, J., took no part.